### COMMERCIAL CITY BANK OF AMERICUS v. HALL.

(District Court, S. D. Georgia, W. D. March 18, 1913.)

PAYMENT (§ 39*)—APPLICATION OF PAYMENTS—SECURED DEBT—SALE OF MORTGAGED PROPERTY—PROCEEDS.

Civ. Code Ga. 1910, § 4316, provides that, when a payment is made to a creditor holding several demands, the debtor may direct its application; but, if he fails to do so, the creditor may appropriate it at his election, and, if neither exercises such privilege, the law will apply it in such manner as is reasonable and equitable, as to the parties and third persons, and that in general the oldest lien and the oldest item will be first paid. *Held*, that where a bankrupt, being indebted to a bank on an overdraft, and also on a note secured by a chattel mortgage, sold a portion of the mortgaged property at the instance of the bank and delivered the proceeds to it, the bank was bound to apply the deposit in payment of the mortgage debt.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 104–114; Dec. Dig. § 39.*]

In Bankruptcy. In the matter of bankruptcy proceedings of George C. Hall. Petition to review a referee's order sustaining a motion to expunge the claim of the Commercial City Bank of Americus. Affirmed.

John R. L. Smith, of Macon, Ga., for Commercial City Bank.

SPEER, District Judge. This is a contest between the Commercial City Bank of Americus and George C. Hall, a bankrupt. It has been passed upon by the referee and brought here by a petition for review. It appears from the evidence that the bank held a mortgage dated

---

January 11, 1909. This was given to secure the payment of a note made by the bankrupt for the sum of $1,000, and due on demand, "and all other notes or drafts which the grantor may execute to the grantee within 12 months succeeding this date to the amount of $1,000." The mortgage pledged the property following:

"One light chestnut sorrel horse, named Happy Bob, about five years old; one dark chestnut sorrel horse, named True Tucker, about six years old; one black horse, named Frank, about ten years old; one black mare mule, named Beck, about seven years old; one red mare mule, named Mary, about eight years old; one two-horse wagon and one one-horse wagon; one single low-wheeled rubber-tire buggy."

Of these assets thus mortgaged it seems that Happy Bob was of more value than True Tucker, and the rest of his stable companions, not omitting one two-horse and one one-horse wagon and the low-wheeled rubber-tire buggy.

It appears from the evidence that the bank was aware of the superior value of Happy Bob, and demanded that he should be sold. The bankrupt testifies that the president of the bank told him that he must sell Happy Bob at some price and take up the mortgage on the 20th. Happy Bob brought $2,000. The bankrupt testifies that he carried this sum to the bank on the 22d and instructed that it be applied on the mortgage. He also testified that he asked for his note and mortgage, but that Mr. McNulty, the cashier, said that he could not find it right then, but would find it and hand it to him. He went back for his mortgage afterwards, but did not get it. This statement was in part denied by the cashier of the bank. He testified that there were no instructions to apply the price of Happy Bob to the discharge of the mortgage. He also testified that Hall had an overdraft of something like $3,000. He, however, added that he knew the horse had been sold, and that the $2,000 was the proceeds of the sale, and the bank made no demand on Hall for the payment of any particular portion of his debt out of this fund.

The bank contends that the mortgage was not paid, and it had the right to place the $2,000 to Hall's credit on the open account. It appears, therefore, that there is a sharp conflict in the evidence. The referee, passing on this question, having found in favor of the bankrupt, and he having heard the witnesses testify, under the familiar rule, I can discover no reason why I should disregard his finding. There is, moreover, a legal principle settled by the Code of Georgia which seems to make it clear that the referee is right. Section 4316 of the Code of Georgia provides:

"When a payment is made by a debtor to a creditor holding several demands against him, the debtor has the right to direct the claim to which it shall be appropriated. If he fails to do so, the creditor has the right to appropriate at his election. If neither exercises this privilege, the law will direct the application in such manner as is reasonable and equitable, both as to parties and third persons. As a general rule the oldest lien and the oldest item in an account will be first paid, the presumption of law being that such would be the fair intention of the parties."

This statute is a combination both of the common law and the civil law. It is a general rule of the common law that, if the debtor fails

to direct in what manner a payment shall be applied, the creditor may make whatever application he pleases. The rule of the civil law is different; it looks more to the interest of the debtor. It requires that, in case he makes no application of a payment, the creditor shall so apply it as to operate most advantageously to the debtor. In order to do this, it obliged the creditor to make the payment on that debt which was most burdensome to the debtor, or in which his safety or honor was most concerned, or that which he had the most interest to discharge.

The codification of our state law, as is generally known, is largely the work of that famous jurist, the late T. R. R. Cobb. The liberality of the mind of this renowned man impelled him to make large drafts upon the more liberal principles of the civil law. One of these, doubtless, is found in the last sentence of the Code section above quoted:

"As a general rule the oldest lien and the oldest item in an account will be first paid, the presumption of law being that such would be the fair intention of the parties."

Taking the testimony of the bank official to be true, and applying this principle, it is strongly persuasive that the finding of the learned referee was right. There is, however, an additional consideration in support of that finding. Happy Bob was mortgaged property. It is not denied that he was sold by the demand of the bank, and even if the debtor, who still held title to him, notwithstanding that he had been mortgaged to secure the debt, was silent as to the application of his price, the bank knew that he was part of the property given to secure the mortgage, and I think was under obligation to apply the deposit to reduce the amount due on that lien.

For these reasons, order will be taken confirming the findings of the referee.